Barnard, P. J.
The plaintiffs held a good debt against Maxwell & Son. The evidence establishes this fact, and •it is not disputed, Maxwell & Son were unable to meet their ■payments and were probably insolvent. The eldest Maxwell in the early part of 1886 conveyed to the younger the *550 stock of groceries owned by them as partners and the purchaser was to pay the firm’s debts. In February, 1886, the son conveyed all the stock to one, Crozier, who was his brother-in-law. This assignment does not appear to have been operative or real. In this situation of the property the plaintiffs and young Maxwell had an interview, when the plaintiffs asserted that the Crozier sale was not good and that they must be paid. Maxwell prepared a confession of judgment and endorsed notes to secure the debt and that they would give time in the notes in which Maxwell could collect the funds from the business. This arrangement fell through, and the bill of sale was given by Maxwell and Crozier to the plaintiffs, and the plaintiffs at once took possession. The plaintiffs debt was then about $500. The only question of fact was whether this arrangement was in fraud of creditors. There were four direct witnesses to the transaction. Maxwell is very confused in his testimony. He states that the bill of sale was before the confession and that it was after; he states conversations upon both occasions, and it is not very clear as to the fact whether they were spoken upon the first or second occasion. In answer to a question as to what was said on the giving of the bill of sale his answer was, “that they would’nt bother me,” he said he could settle with them (the creditors) for a great deal less than I could, and that the store would’nt be touched, he would make that settlement for twenty or thirty cents on the dollar, which I could’nt get, he said there would be nothing done only a clerk sent over there with me, just to stand there and I was to run the store and see that everything went on all right, nothing else. He stated that when the other creditors saw that he had that bill of sale of the store that they would say there is nothing there for us.”
Against this testimony there is the testimony of the lawyer, William S. Muddox, who drew the bill of sale and conducted the negotiation for plaintiffs, of the plaintiff, John E. Michaels, and of J. A. B. Cówles, a lawyer who accompanied Muddox.
They all say that young Maxwell estimated the value of the goods at $700, but not a forced sale, and that the plaintiffs agreed'with him that they only wanted security for their debt, and that if there was any surplus Maxwell or his creditors could have it. The property did not, in lact, bring enough to pay the plaintiffs. There was no fraud in such a transaction. • It was not an assignment under our assignment laws. Royer Wheel. Co. v. Fielding, 101 N. Y., 504.
It was merely a mortgage with the mortgagees in posses *551 sion, and the agreement to pay over any surplus violated no law. Smith v. Beattie, 31 N. Y., 542.
It was a real mortgage, and the surplus could be reached by creditors, and no title was intesposed against their claim as to the surplus. The charge, therefore, that if the agreement was as testified to by Mr. Maxwell, that the overplus should be paid to Maxwell or his creditors, that the bill of sale was “an invalid instrument,” was erroneous.
The judgment should therefore be reversed, and a new trial granted, costs to abide event.
Dykman and Pratt, J. J., concur.